```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOHN J. CUIE               : CIVIL ACTION
                           :
     vs.                   :
                           : NO. 05-CV-4771
NORDSTROM, INC.            :
```

### MEMORANDUM AND ORDER

**JOYNER, J.**                                          November 1, 2005


     This case is before the Court for disposition of Defendant's Motion to Stay Judicial Proceedings Pending Arbitration and Plaintiff's Cross-Motion to Strike Defendant's Motion to Stay. For the reasons set forth in the paragraphs which follow, the defendant's motion to stay is granted and the plaintiff's motion is denied.

### History of the Case

     This case arose out of Plaintiff, John Cuie's termination from his employment with defendant Nordstrom on August 9, 2004. On September 6, 2005, Mr. Cuie filed a complaint in this Court alleging that, in terminating him, Defendant Nordstrom intentionally and unlawfully discriminated against him because of his race and in retaliation for opposing discriminatory tactics in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, and 42 U.S.C. §1981.  Inasmuch as the

plaintiff had signed an arbitration agreement when he commenced employment at Nordstrom's Perimeter Mall store in Atlanta, GA, Defendant now moves to stay the judicial proceedings in this matter pending arbitration.

**Standards Governing Motions to Stay Pending Arbitration**

Motions to compel arbitration are reviewed under the well-settled summary judgment standard set forth in Fed.R.Civ.P. 56(c).  Zimmer v. CooperNeff Advisors, Inc., Civ.A.No. 04-3816, 2004 U.S. Dist. LEXIS 25465 at *15 (E.D.Pa. Dec. 20, 2004), citing Bellevue Drug Co. v. Advance PCS, 333 F.Supp.2d 318, 322 (E.D.Pa. 2004).  See Also, Berkery v. Cross Country Bank, 256 F.Supp.2d 359, 364, n.3 (E.D.Pa. 2003).  Thus, the moving party must prove through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any...that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Id., quoting Fed.R.Civ.P. 56(c).  Additionally, this Court "must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party."  Id.

**Discussion**

Generally speaking, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.  AT & T Technologies, Inc.

2

v. Communications Workers of America, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).  The Federal Arbitration Act, 9 U.S.C. §1, *et. seq.* codifies Congress' desire to uphold private arbitration agreements that produce prompt and fair dispute resolution without involving the courts.  In furtherance of this interest, a court must scrupulously honor the bargains implicit in such agreements and interfere only when an award is seriously problematic.  Brentwood Medical Associates v. United Mine Workers of America, 396 F.3d 237, 239 (3d Cir 2005).  The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement and it authorizes a federal district court to issue an order compelling arbitration if there has been a failure, neglect or refusal to comply with the arbitration agreement. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), citing 9 U.S.C. §§3 and 4.[1]

---

[1] Specifically, the relevant sections of the Arbitration Act provide as follows in pertinent part:

**§2.  Validity, irrevocability and enforcement of agreements to arbitrate**

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

**§3.  Stay of proceedings where issue therein referable to arbitration**

The U.S. Supreme Court has made clear that the FAA applies to all arbitration agreements involving interstate commerce, including employment contracts.  See, Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Statutory claims also may be the subject of an arbitration agreement, enforceable by the FAA.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).  Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue; it is therefore the burden of the party seeking to avoid arbitration to show Congressional

---

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**§4.  Failure to arbitrate under agreement; petition to United States Court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination**

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement...The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement...

intention to preclude arbitration.  Id.  In determining whether statutory claims may be arbitrated, the court must first ask whether the parties agreed to submit their claims to arbitration and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.  Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000); Shearson/American Express, Inc. v. McMahon, 482 U.S. at 227, 107 S.Ct. at 2337.

Furthermore, before a federal district court entertaining a motion to compel arbitration may order a reluctant party to arbitrate, the FAA further requires the court "to engage in a limited review to ensure that the dispute is arbitrable--*i.e.*, that a valid agreement to arbitrate exists and that the specific dispute falls within the substantive scope of that agreement." Berkery v. Cross Country Bank, 256 F.Supp.2d at 364, quoting PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990). See Also, Lomax v. Woodmen of the World Life Insurance Society, 228 F.Supp.2d 1360, 1362 (N.D.Ga. 2002) ("In order to determine whether arbitration should be compelled, the Court must assess whether: (1) there is a valid written agreement to arbitrate; (2) the issue sought to be arbitrated is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.")

In determining whether a valid arbitration agreement exists

under the FAA, "the federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts."  Spinetti v. Service Corporation International, 324 F.3d 212, 214 (3d Cir. 2004), citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).  Bullick v. Sterling, Inc., Civ. A. No. 03-6395, U.S. Dist. LEXIS 21128 at *8 (E.D.Pa. Oct. 21, 2004), citing Spinetti, supra.  Applying the relevant state contract law, a court may also hold that an agreement to arbitrate is "unenforceable based on a generally applicable contractual defense, such as unconscionability."  Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004).  See Also, Doctors Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 909 (1996)("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening §2. [citations omitted]... Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.")

In this case, there is no dispute that the plaintiff "knowingly" agreed to arbitrate "any covered claim between [himself] and Nordstrom, including but not limited to harassment and discrimination..."  (Arbitration Agreement, ¶1).  Plaintiff

6

likewise does not contend that Congress evinced an intention in either Title VII or §1981 to preclude arbitration.² Accordingly, we turn now to an examination of the relevant state law of contracts.

In so doing, we note at the outset that the Arbitration Agreement which the plaintiff signed provided at paragraph 5 thereof, that "[t]his Agreement, as well as all terms and conditions of my employment, shall be governed by and shall be interpreted in accordance with the Federal Arbitration Act (FAA) and the laws of the state of Georgia." Although he later was transferred to the Nordstrom store in King of Prussia, PA, he apparently did not sign a new agreement. As it appears from a reading of Plaintiff's complaint that his claims arise out of his employment at both the Atlanta, Georgia and King of Prussia, Pennsylvania stores, we now examine both Georgia and Pennsylvania law to determine whether or not the arbitration agreement at issue is enforceable.³

---

   ² Rather, Mr. Cuie first argues that, after pursuing the first two steps in Nordstrom's dispute resolution process, he was unable to obtain a request for arbitration form from the defendant's Human Resources Department and was thus unable to initiate the arbitration process. Second, plaintiff contends, Defendant prevented him "from affording arbitration fees and other fees" by, *inter alia*, failing to pay him in full for work performed after his wrongful discharge and by appealing his claim for unemployment compensation benefits.

   ³ Page 8 of the Nordstrom Dispute Resolution Program Booklet reads in pertinent part:

> "If you transfer to another Nordstrom location or your employment is terminated, the Dispute Resolution Program still applies to you for any dispute that arose in connection with your employment in Georgia."

The basic requirements for a binding contract are essentially the same under the laws of both Pennsylvania and Georgia: (1) a firm or definite offer, (2) an acceptance by which the second party agrees to be bound by the terms of the offer and (3) a bargained-for consideration.  See, Citizens Trust Bank v. White, 274 Ga.App. 508, 510, 618 S.E.2d 9 (2005); Tuman v. Genesis Associates, 935 F.Supp. 1375, 1389 (E.D.Pa. 1996); Jenkins v. County of Schuylkill, 441 Pa.Super. 642, 658 A.2d 380, 383 (1995).  Here, it clearly appears from the pleadings and materials of record that Nordstrom's Dispute Resolution Policy and Arbitration Agreement were made a part of Defendant's offer of employment to Plaintiff and that Plaintiff acknowledged both by signing his employment application and the Arbitration Agreement itself.  For his part, Plaintiff accepted that offer by signing the agreement and commencing employment with the defendant company.  Indeed, the terms for acceptance and a recitation of the consideration is provided in paragraph 10 of the Arbitration Agreement:

> "**I understand that I would not be or remain employed by Nordstrom absent signing this Agreement**.  My signature below acknowledges I understand and agree that in consideration for my employment with Nordstrom, Inc., I agree to the Nordstrom Dispute Resolution Program."  (Emphasis in original)

As Nordstrom employed Plaintiff and Plaintiff worked for Nordstrom for nearly four years, we find that adequate consideration existed to support the instant contract/agreement

8

to arbitrate.

We next ascertain whether the scope of plaintiff's claims against Nordstrom fall within the scope of the Arbitration Agreement. In so doing, we again review the language of the Agreement itself which further provides, in relevant part:

> My signature below acknowledges that I have read and understand the Nordstrom Dispute Resolution booklet ("Program booklet"), and that I agree to arbitrate any dispute, claim, or controversy that is covered in the Program booklet ("covered claim") against Nordstrom, Inc., its officers, directors, shareholders, current and former employees, or others in their personal or official capacity, arising out of my employment or the termination of my employment. Nordstrom also agrees to arbitrate any matter covered by this Arbitration Agreement ("Agreement"). **I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I KNOWINGLY AGREE AND CONSENT TO ARBITRATE ANY COVERED CLAIM BETWEEN MYSELF AND NORDSTROM, INCLUDING BUT NOT LIMITED TO HARASSMENT AND DISCRIMINATION, AS MORE CLEARLY DEFINED IN THE PROGRAM BOOKLET. I EXPLICITLY WAIVE MY RIGHT TO A JURY TRIAL OR BENCH TRIAL ON ANY CLAIMS INVOLVING EMPLOYMENT DISPUTES BETWEEN MYSELF AND NORDSTROM.** I also understand that some claims may not be submitted to arbitration, as listed in the Program booklet.

Under the heading "What Claims are Covered," the Dispute Resolution Program Booklet provides:

> Instead of courtroom litigation, You must use the Nordstrom Dispute Resolution Program to resolve work-related problems you have now or in the future against Nordstrom, its officers, directors, shareholders, employees or others in their personal or official capacity. The Dispute Resolution Program covers these legally protected rights:
>
> • Claims for unlawful harassment, including but not limited to sexual harassment.
>
> • Claims for unlawful discrimination, including, but not limited to, claims based on race, sex, marital status, sexual orientation, religion, national origin, claims

       based on age under the Age Discrimination in Employment Act, or claims based on disability under the Americans with Disabilities Act.

- Any claim for wages or other compensation.

- Claims for breach of any contract, covenant or warrant (express or implied).

- Tort claims, including, but not limited to, negligent hiring, supervision or retention, assault, battery, tortious interference with contract, tortious interference with prospective business relations, defamation, slander, libel, invasion of privacy, false light, or negligent or fraudulent misrepresentation; however, any claims covered under the exclusivity provisions of worker's compensation laws shall be brought through the Labor and Industrial Relations Commission.

- Claims for wrongful termination, including but not limited to retaliatory discharge claims.

- Claims for violation of any federal, state or other governmental law, statute, regulation or ordinance.

In like fashion, under the heading "What Claims are Not Covered," the Booklet states:

    The Dispute Resolution Program Does not Cover:

- Any criminal complaint or proceeding.

- Restitution by an employee for a criminal act for which he or she has been found guilty, or has pled guilty or no contest.

- Claims for benefits or other relief under any employee benefit or workers compensation plan sponsored by the company.

- Any claim by the company for equitable relief for employee violation of contract, covenant against competition or the use or disclosure of trade secrets or other confidential information.

- Claims for unemployment insurance benefits.

Given that Plaintiff's complaint alleges that Nordstrom unlawfully terminated his employment as a sales person in the cosmetics department on the basis of his race (African American) in violation of Title VII and Section 1981, we find that the claims at issue here clearly fall within the scope of the Arbitration Agreement.  As mandatory arbitration of the specific claims brought by plaintiff under Title VII and Section 1981 does not offend federal policy under the FAA nor do those sections prohibit employers from requiring mandatory arbitration of employment disputes as a condition of employment, we turn now to the issue of whether or not a generally applicable contractual defense would render the agreement to arbitrate unenforceable here.  See, e.g., Caley v. Gulfstream Aerospace Corp., 333 F.Supp.2d 1367, 1378, 1379 (N.D. Ga. 2004), citing *inter alia*, Circuit City Stores, Inc. v. Adams, 532 U.S. at 123 and Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1310 (11th Cir. 2002).

Of course, the burden of proving a generally applicable contract defense lies with the party challenging the contract provision.  Lloyd v. Hovensa, LLC., 369 F.3d 263, 274 (3d Cir. 2004).  Unconscionability is a defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.  Harris v. Green Tree Financial Corp., 183 F.3d 173, 181 (3d Cir. 1999).  "Under Pennsylvania law, the test for unconscionability is whether one of the parties

11

lacked meaningful choice about whether to accept the provision or contract in question and the challenged provision or contract unreasonably favors the other party to the contract." Bullick v. Sterling, Inc., supra., quoting Zumpano v. Omnipoint Communications, Civ. A. No. 00-595, 2001 U.S. Dist. LEXIS 376 at *5 (E.D.Pa. Jan. 18, 2001).

As does Pennsylvania, Georgia courts generally consider a variety of factors in deciding claims of unconscionability, which have been divided into procedural and substantive elements. Jenkins v. First American Cash Advance of Georgia, 400 F.3d 868, 875 (11th Cir. 2005). Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves. Id., quoting NEC Technologies, Inc. v. Nelson, 267 Ga. 390, 478 S.E.2d 769, 771-771 (1996); Harris v. Green Tree Financial Corp., 183 F.3d at 181 ("[Procedural] unconscionability involves, for example, 'material, risk-shifting' contractual terms which 'are not typically expected by the party who is being asked to assent to them' and 'often appear in the boilerplate of a printed form.'(citation omitted) Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. Thus, unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter

12

and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.") Stated otherwise, both procedural and substantive unconscionability must be present for a court to determine that an arbitration clause is unconscionable. Zimmer v. CooperNeff Advisors, Inc., 2004 U.S. Dist. LEXIS 25465 at *19.

In this case, the plaintiff argues that he should not be required to resolve his dispute through arbitration because the Nordstrom Arbitration Agreement and Dispute Resolution Program require him to incur what he submits are unfair costs and fees.

Arbitration costs are directly related to a litigant's ability to pursue a claim and, as the U.S. Supreme Court has recognized, "the existence of large arbitration costs could preclude a litigant from effectively vindicating her statutory rights in the arbitral forum." Blair v. Scott Specialty Gases, 283 F.3d 595, 605 (3d Cir. 2002), quoting Green Tree Financial Corp. v. Randolph, 531 U.S. at 90, 121 S.Ct. at 513.  The mere existence of a fee-splitting provision in an agreement is not, however, sufficient in and of itself to satisfy a claimant's burden of proving likelihood of incurring prohibitive costs. Blair, 283 F.3d at 610.

While the courts have yet to specifically define what quantum of proof is required to sustain a claimant's burden of proving such prohibitively expensive arbitration costs as would

13

render an arbitration agreement unenforceable, Green Tree dictates that such an analysis be undertaken on a case-by-case basis.  See, e.g., Spinetti, 324 F.3d at 216-217.  ("We are satisfied that the district court's analysis properly followed the case-by- case teachings of Green Tree on how to decide if a cost-splitting provision in an arbitration agreement denies potential litigants the opportunity to vindicate their statutory rights.")  Although Green Tree does not provide us with a standard for how detailed the showing of prohibitive expenses must be to support the conclusion that the provision, at minimum, is unenforceable, several courts have taken a stab at outlining the proper formula.  Spinetti, 324 F.3d at 217, citing, *inter alia*, Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 663 (6th Cir. 2003)(holding that potential litigants must be given the opportunity to demonstrate that potential costs are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights,) and Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549, 556 (4th Cir. 2001)(stating that the appropriate inquiry is one that focuses on the claimant's ability to pay the arbitration fees and costs and whether these are substantial enough to deter the bringing of claims.)

    In this case, the Arbitration Agreement states the following with regard to fees and expenses:

> The arbitration shall be arbitrated by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA").  I understand that I will be required to pay the first $140 of the costs of commencing an arbitration with the AAA and that the remainder of these costs will be paid by Nordstrom, subject to a subsequent award by the arbitrator.  The decision or award of the arbitrator shall be final and binding upon the parties.  The arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction, including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under the law.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.  I agree that any relief or recovery to which I am entitled from any claims arising out of my employment, termination of employment, or any claim of unlawful discrimination shall be limited to that awarded by the arbitrator.

According to page 5 of the Dispute Resolution Program booklet,

> To use the arbitration process, a filing fee and arbitrator's fee must be paid.  The filing fee is an administrative expense charged by the AAA for coordinating the process.  The arbitrator's fee is the payment for his or her services.
>
> The AAA filing fee will be at least $500.  Your share of this cost is $140 and must be paid when you submit your request for arbitration.  Nordstrom will then pay the remainder of the AAA filing fee.  Nordstrom will also pay all of the arbitrator's fee and any other AAA administrative expenses.
>
> If the arbitrator finds completely in your favor, Nordstrom will reimburse your portion.  If Nordstrom initiates the arbitration, you pay no filing or arbitrator's fees.
>
> In addition to the above fees and expenses, you must also pay:
>
> • Your attorney fees, if you choose to have legal representation.
>
> • Any costs for witnesses you call (other than Nordstrom management witnesses).

    •     Any costs to produce evidence you request, including, but not limited to, deposition costs or discovery requests.

    •     Your costs for a stenographic recording and/or transcript...

In certain cases, attorney fees may be assessed against you or Nordstrom.  Here are some guidelines to keep in mind:

1.     The arbitrator may award to you or Nordstrom reasonable attorney fees as may be authorized by applicable law.  For example, the arbitrator may assess attorney fees against you or Nordstrom if either party makes a claim that is frivolous, or is factually or legally groundless, or if there is a written agreement that provides for a payment of attorney fees.

2.     If you use a method other than arbitration to resolve a covered claim, the arbitrator may require you to pay reasonable attorney fees or other expenses Nordstrom incurs in resolving the situation and obtaining dismissal of your actions. Likewise, Nordstrom can be assessed reasonable attorney fees if the company fails to use arbitration for resolving a covered claim.

In support of his argument, Defendant proffers only (1) copies of correspondence between himself and his various Nordstrom managers and/or Human Resources personnel reflecting that he had difficulties getting along with his counter manager at the Atlanta store and that Nordstrom terminated his employment on the basis of his having been accused of sexual harassment by another employee at the King of Prussia store, (2) copies of his pay statements reflecting that Nordstrom was late paying his wages on at least one occasion and (3) a letter from the Georgia Department of Labor indicating that Nordstrom had withdrawn its appeal from a decision by the unemployment compensation claims

examiner awarding Plaintiff unemployment benefits.  Thus, in this case also "[n]otably missing is any showing of financial wherewithal, such as income statements or statements of net worth of the plaintiff or any affidavit or evidence showing how the potential for fee-shifting of attorney's fees is tantamount to the 'existence of large arbitration costs which could preclude a litigant such as Plaintiff from effectively vindicating his federal statutory rights in the arbitral forum.'"   Bellevue Drug, 333 F.Supp.2d at 331, quoting Green Tree, 531 U.S. at 90.

   Under the Arbitration Agreement's provisions recited above, it is clear that the only expense which the plaintiff will absolutely incur is his share of the initial arbitration filing fee.  He may also, if he chooses to hire an attorney, request a stenographic or deposition transcript and/or call witnesses other than Nordstrom management employees, incur costs attendant thereto.  However, given that Plaintiff's share of the arbitration initiation costs are capped at $140, some $90 *less* than what he spent in initiating this civil action here and that he would likewise expend monies for attorney's and witness fees and deposition and other transcriptions if the case were allowed to proceed in the district court, we cannot find arbitration under the agreement to arbitrate at issue here to be so prohibitively expensive as to render it unenforceable.  See, 28 U.S.C. §1914(a)(requiring the party initiating a civil action in

district court to pay a filing fee of $250).  In all other respects, the costs and expenses which plaintiff *may* incur are wholly speculative and, as we have previously opined, "Plaintiff's speculation about prohibitive costs...is not enough to invalidate an otherwise enforceable arbitration provision." Goodman v. ESPE America, Inc., Civ. A. No. 00-CV-862, 2001 WL 64749 (E.D.Pa. Jan. 19, 2001).

For all of these reasons, we shall deny the plaintiff's motion to strike, and shall grant the defendant's motion to compel arbitration and stay these judicial proceedings pending arbitration of the plaintiff's claims in this matter.[4]

An order follows.

---

[4] Indeed as noted in footnote 1 above, the remedies of a stay of proceedings and an order compelling arbitration are provided for under Sections 3 and 4 of the FAA, 9 U.S.C. §§3 and 4.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JOHN J. CUIE                    : CIVIL ACTION
                                :
     vs.                        :
                                : NO. 05-CV-4771
NORDSTROM, INC.                 :
```

**ORDER**

AND NOW, this    1st    day of November, 2005 upon consideration of Defendant's Motion to Stay Judicial Proceedings Pending Arbitration and Plaintiff's Motion to Strike Defendant's Motion to Stay, it is hereby ORDERED that the Defendant's Motion is GRANTED, the Plaintiff's Motion is DENIED and the parties are DIRECTED to immediately submit this matter to arbitration in accordance with the terms of the Nordstrom Arbitration Agreement and Dispute Resolution Program.

IT IS FURTHER ORDERED that all judicial proceedings in this matter are STAYED pending the arbitration proceedings and the Clerk of Court is directed to place this matter into Civil Suspense pending the outcome of arbitration.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER,          J.